1  Charles D. Marshall (State Bar No. 236444)
**MARSHALL LAW FIRM**
2  2121 N. California Blvd., Suite 290
Walnut Creek, CA  94596
3  Telephone: (925) 575-7105
Facsimile: (855) 575-7105
4  cdm@marshall-law-firm.com

5  Attorney for RODNEY MCBRIDE
and TRULISA MCBRIDE
6

7                **UNITED STATES DISTRICT COURT**

8          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10 RODNEY MCBRIDE and TRULISA          Case No.  2:15-cv-1222-MCE-KJN
   MCBRIDE, as individuals,
11
                                       **MEMORANDUM OF POINTS AND**
12          Plaintiffs,                **AUTHORITIES IN SUPPORT OF**
                                       **MOTION FOR ENTRY OF DEFAULT**
13      vs.                            **JUDGMENT AND FOR ATTORNEY'S**
                                       **FEES AND COSTS AGAINST**
14 DELAWARE SOLUTIONS, LLC, a New      **DEFENDANT**
   York limited liability company,
15
            Defendant.                 Hearing Date: October 8, 2015
16                                      Time: 10:00 a.m.
                                       Location: 8th Floor, Courtroom 25
17                                     Judge. Hon. Kendall J. Newman

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Plaintiffs submit this Motion and Memorandum of Points and Authorities in Support of their application for a Default Judgment and for attorney's fees and costs against Defendant Delaware Solutions, LLC ("Delaware"). Plaintiffs submit on the pleadings and request no oral arguments, unless required by the Court.

## PROCEDURAL HISTORY

Plaintiffs initiated this suit for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788 et seq. ("Rosenthal Act"), a state action modeled after the FDCPA, on June 8, 2015, naming Defendant Delaware Solutions, LLC. On June 22, 2015, Defendant was served with a Summons and Complaint. To date, Defendant has failed to respond in any manner. On August 6, 2015, the Court entered Defendant's Default upon Plaintiffs' request. This motion for Default Judgment follows.

## ARGUMENT

**I.      REQUEST FOR ENTRY OF DEFAULT JUDGMENT**

Federal Rule of Civil Procedure 55(b)(2) allows for entry of default judgment by the Court. "A plaintiff does not receive default judgment as a matter of right; rather, a court has discretion as to whether it should be granted." *United States v. Boyce*, 148 F.Supp.2d 1069, 1093 (S.D. Cal. 2001)(citations omitted). In exercising that discretion, courts consider the following factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was

2

due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil

Procedure favoring decisions on the merits." *Id.* (quoting *Eitel v. McCool*, 782 F.2d 1470,

1471-72 (9th cir. 1986)).

In this case, the Court should have no doubt about the propriety of entering a default

judgment against Defendant. There is no question that Defendant is aware of the pending

action, yet it refused to appear to defend the lawsuit. Further, Plaintiffs already sought and

obtained the default of Defendant. A copy of that request was timely served on Defendant,

with no response. A substantial amount of time has lapsed between the time Defendant was

served a summons and complaint and this instant motion for Default Judgment. In spite of

that time lapse, Defendant has done nothing to defend its interests in this case, contact the

Court with regard to the Entry of Default, or contact Plaintiff's counsel. Plaintiff's Complaint

adequately states a claim against Defendant for violations of the FDCPA and California's

Rosenthal Act (Cal. Civ. Code § 1788 et seq.). Accordingly, the Court should grant Plaintiffs'

request for default judgment.

## II.   PLAINTIFFS ARE ENTITLED TO RECOVER THEIR ACTUAL DAMAGES FROM DEFENDANT

As noted above, Plaintiffs brought this action against Defendant as a result of

Defendant's violations of the Fair Debt Collections Practices Act and Rosenthal Act.

Specifically, Plaintiffs sought to be compensated for: Defendant (a) contacting third parties

such as Plaintiff Rodney McBride's employer without Mr. McBride's prior consent (see

Complaint ¶¶ 10. 19(a), 21(a)); (b) making threats to both Plaintiffs that Defendant would call

a variety of Ms. McBride's relatives and inform them about the collection activity, and by

repeatedly calling Ms. McBride at her place of employment (id., ¶¶ 8, 11, 19(b), 21(b)); (c)

3

1   using profanity when speaking to Plaintiff Rodney McBride, and in leaving messages in the

2   general voicemail box of his former employer. (id., ¶¶ 10, 19(c), 21(c)); (d) misrepresenting

3   to Plaintiffs that criminal charges would be and had been made by Defendant regarding the

4   debt, and that a warrant for Mr. McBride's arrest had been issued (id., ¶¶ 13, 14, 19(d),

5   21(d)); and (e) failing to send, within five days of the initial communication with Plaintiffs—

6   or at all in this matter—the notice providing the amount of the debt, the name of the creditor,

7   and a statement of various consumer rights under the FDCPA, and for failing to send the

8   required notice under the Rosenthal Act (id., ¶¶ 16, 19(e), 21(e)).

9

10  **A.      THE FDCPA ALLOWS FOR RECOVERY OF EMOTIONAL DISTRESS AS
            ACTUAL DAMAGES**

11

12          The United States Congress has found abundant evidence of the use of abusive,

13  deceptive, and unfair debt collection practices by many debt collectors, and has determined

14  that abusive debt collection practices contribute to the number of personal bankruptcies, to

15  marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote

16  the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), to eliminate

17  abusive debt collection practices by debt collectors, to insure that those debt collectors who

18  refrain from using abusive debt collection practices are not competitively disadvantaged, and

19  to promote consistent State action to protect consumers against debt collection abuses. See 15

20  U.S.C. § 1692(a)-(e).

21

22          Damages for emotional distress may be recovered under the FDCPA without proving

23  the elements of a state tort. The 9th Circuit approved the following jury instruction regarding

24  actual damages under 15 U.S.C. § 1692k(a)(1):

25

26                                                4

27

28

> Actual damages include damages for personal humiliation, embarrassment, mental anguish and emotional distress. There is no fixed standard or measure in the case of intangible items such as humiliation, embarrassment, mental anguish or emotional distress. Mental and emotional suffering and distress pass under various names such as mental anguish, nervous shock and the like. It includes all highly unpleasant mental reactions such as fright or grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. The law does not set a definite standard by which to calculate compensation for mental and emotional suffering and distress. Neither is there any requirement that any witness express an opinion about the amount of compensation that is appropriate for the kind of law.

> The law does require, however, that when making an award for mental and emotional suffering and distress you should exercise calm and reasonable judgment. The compensation must be just and reasonable.

*See McCollough v. Johnson, Rodenburg & Lauinger*, Case No. 09-35767 pages 27, 27. *3146, 3147 (9th Circuit, March 2011).

Under the FDCPA actual damages for emotional distress may be proved independently of the state law requirements of proof for the tort of intentional infliction of emotional distress. *Grassley v. Debt Collectors, Inc*., 1992 U.S. Dist. LEXIS 22782 (D. Or. Dec. 14, 1992). Further, neither proof of physical injury nor extreme or outrageous conduct is necessary to support damages for emotional distress under the FDCPA where the violation was intentional. *Keane v. National Bureau of Collections*, Clearinghouse No. 35,923 (D. Md. 1983). Before the *McCollough* decision, the Ninth Circuit had not specifically ruled on whether corroborating evidence is necessary to prove the amount of emotional distress damages awardable under the FDCPA, however it has generally stated that emotional distress damages can be awarded without corroborative evidence where circumstances make it obvious that a reasonable person would suffer significant emotional harm. *See Perkons v.*

5

*American Acceptance*, No. CV-10-8021-PCT-PGR (D. Ariz. 2010) *citing Hartung v. JD.*

*Byrider, Inc*., 2009 WL 1876690, at *8 (E.D.Cal. June 26, 2009).

**III.     SUMMARY OF ILLEGAL CONDUCT**

Defendant engaged in the following illegal conduct which gives rise to this action.

Plaintiffs now provide this summary in order to provide the Court more of an understanding

of the basis for the amount of damages sought.

In early February 2015, Defendant called Plaintiff Rodney McBride in an effort to

collect an alleged debt and left a message on Mr. McBride's voicemail as follows:

> *Rodney McBride? This is Mr. Steven Sanchez. I haven't heard back from you regarding your payday loan with Ace Cash Express. I am going after you co-signer to pay back your loan—Trulisa Anne McBride Johnson—whose social security number starts with [redacted for privacy], and whose date of birth is September of [redacted for privacy]. We show her as the co-signer on this loan, as well as Mia Bradford, as uh, as a credit reference. I just left a message with Trulisa McBride on her phone number which does identify her name. I have a phone number allegedly for her mother, Ruby Lee Johnson, as well as the Baxter family, the Claybourne family and the Johnson family, living in the state of Arkansas, Tennessee and Georgia. If I do not hear back from you today, I will be calling all of Trulisa's relatives in regards to this matter. And maybe you'll get one of these messages and call me back 844-259-8341. We have a $50 payment scheduled for June 30th, which you missed. I need to speak with you as soon as possible.*

See Compl. ¶ 8 and Declaration of Plaintiff Rodney McBride ("Rodney McBride

Decl.") ¶ 4; Declaration of Plaintiff Trulisa McBride ("Trulisa McBride Decl.") ¶ 5.

Ms. McBride was not a co-signer on nor was she liable for the alleged Ace Cash

Express loan. See Compl. ¶ 9; Rodney McBride Decl. ¶ 5; Trulisa McBride ¶ 3.  Neither are

6

any of the third parties referenced by Defendant Delaware in the above voicemail message transcript. *Id.*

On or about February 4, 2015, Delaware called Mr. McBride's former employer—McBride Investments, his father's company—about collection on the loan.  In an earlier call, Mr. McBride informed Delaware that he no longer worked for McBride Investments, yet Delaware called McBride Investments several times anyway, leaving profane and derogatory messages in the general voice mailbox providing details about the alleged debt and efforts to collect on it.  See Compl. ¶ 10 and Rodney McBride Decl. ¶ 6.

In February 2015, Delaware called Mr. McBride's wife—Plaintiff Trulisa McBride—at work regarding collection on the loan. Plaintiff has already requested that Delaware not call Ms. McBride at work, as she works in a Cardiovascular Intensive Care Unit and is not allowed personal, non-emergency phone calls. Trulisa Decl. ¶ 6.  When Ms. McBride returned Delaware's call, Delaware claimed that her "husband owes Ace Check Cashing and promised to pay but didn't. Now you have to pay since he has you as the cosigner." *Id.*

On other occasions, during calls made to the McBrides, Delaware stated that criminal charges had been made against Mr. McBride, and that a warrant for his arrest had been issued.  Delaware attempted to use the threat of fictitious criminal charges as leverage, offering to abstain from making, or to withdraw any charges if the McBrides would settle the debt. See Compl. ¶ 14 and Rodney McBride Decl. ¶ 7. Of course no criminal charges had been made, nor could they have been made. In addition, at no time did Delaware provide the McBride's with the notice of rights required under the FDCPA and state Act to apprise them

7

of their rights in relation to Delaware's persistent, over-the-top collection practices. See Compl. ¶ 16 and Rodney McBride Decl. ¶ 3; and Trulisa McBride Decl. ¶ 4.

As a result of Defendant's collection tactics, Mr. McBride was frightened that he would be subject to arrest for a debt he did not owe. See Compl. ¶ 17 and Rodney McBride Decl. ¶ 8. Ms. McBride was shaken and confused by Delaware's persistent and heavy handed tactics and experienced anxiety, stress, embarrassment, mental anguish and marital discord. See Compl. ¶ 17 and Trulisa McBride Decl. ¶¶ 7-9. Mr. McBride—who suffers from Post-Traumatic Stress Disorder—suffered further emotional harm as a result of Delaware's resulting in the loss of sleep, headaches, depression, anxiety and created marital discord resulting in a multitude of arguments between the McBrides that would not have happened but for Delaware's unsavory debt collection practices. See Compl. ¶ 17 and Rodney McBride Decl. ¶¶ 9-11.

Defendant's actions were deliberate, willful violations of the FDCPA and Rosenthal Act calculated to scare and coerce Plaintiffs into payment. Accordingly, Plaintiffs now request actual damages.  Mr. McBride requests actual damages in the amount of $5,000 to compensate him for Defendant's malicious and abusive conduct. Ms. McBride requests actual damages in the amount of $5,000 to compensate her for Defendant's malicious and abusive conduct.

8

**IV.    PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES UNDER THE FDCPA AND ROSENTHAL ACT FROM DEFENDANT**

Statutory damages of up to $1,000.00 are available each Plaintiffs under both the FDCPA and Rosenthal Act for Defendant's unlawful collection activities.[1] The FDPCA provides that any debt collector who violates any provision of the FDCPA is liable to each Plaintiff for court awarded damages of up to $1,000.00 in addition to any actual damages sustained.[2] Similarly, in addition to any actual damages, Plaintiffs can recover an amount between $100.00 and $1,000.00 under the RFDCPA for Defendant's illegal conduct.[3] These damages are akin to a penalty, *see Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997), and they require the Court to consider the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." Here, Plaintiffs adequately set forth facts in their complaint, and subsequent declarations, that such conduct by Defendant was willful and in total disregard for the rights of Plaintiffs. Defendant also failed to provide proper written notification subsequent to the initial communication which would have provided Plaintiffs an avenue to formally dispute the debt.

Accordingly, based on Defendant's violations of the FDCPA and RFDCPA, and the allegations set forth in their complaint, the maximum amount of statutory damages are called for in this case, in addition to their actual damages,. Specifically, Mr. McBride is entitled to a

---

[1] *See*, 15 U.S.C. § 1692k(a)(2A), and Cal.Civ. Code § 1788.30(b).

[2] 15 U.S.C. § 1692(a).

[3] Cal. Civ. Code § 1788.30(b).

statutory award of $1,000 under the FDCPA, $1,000 under the Rosenthal Act, and Ms.

McBride is entitled to a statutory award of $1,000 under the FDCPA, $1,000 under the

Rosenthal Act, for a total of $4,000 in statutory damages, in addition to the actual damages

discussed below.

## V.     THE AMOUNT SOUGHT FOR ACTUAL DAMAGES IS REASONABLE UNDER THE CIRCUMSTANCES

In addition to statutory damages, Plaintiffs are entitled to an amount for actual

damages. The amount of $5,000.00 for each Plaintiff sought in actual damages is warranted

under the circumstances. Plaintiffs were forced to endure harassment and abuse from

Defendant. Defendant was so blatant in their disregard for Plaintiffs' rights. Defendant not

only threatened to publicize the collection of the debt to relatives, but misrepresented the

existence of criminal charges and threatened Mr. McBride with arrest, all the while ignoring

its own duty to provide Plaintiffs with a notice of rights as required under the FDCPA and

Rosenthal Act. This conduct was not engaged in by accident, but was a deliberate approach to

intimidate and extort money from Plaintiffs. This conduct was outrageous and in complete

disregard for Plaintiffs' rights and warrants a reasonable award of actual damages. Case law

establishing similar default judgments and jury verdicts are commensurate with Plaintiff's

request.

In *Torres v. Bernstein, Shapiro & Assocs., LLC*, 2012 U.S. Dist. LEXIS 87013, *5

(E.D. Cal. June 21, 2012), the court awarded full statutory damages under both the FDCPA

and Rosenthal Act, as well as $5,000 in actual damages for emotional distress.

In *Panahaisl v. Gurney*, 2007 U.S. Dist. LEXIS 17269, (ND Cal. March 7, 2007), the

Northern District of California was asked to assess damages upon Defendant's default in an

10

FDCPA matter. The Court awarded a total of $60,000.00 for the consumers' emotional distress due to Defendants' abusive, harassing, and deceptive debt collection attempts. The emotional distress suffered by the Plaintiffs in *Panahaisl* manifested itself in "embarrassment, fear, anger, panic, humiliation, nervousness, crying fits, difficulty eating and sleeping, and diarrhea." *Id.*

In *Chiverton v. Federal Financial Group, Inc*., 399 F.Supp.2d 96 (D. Conn., 2005) the court awarded full statutory damages, as well as $5,000 in actual damages.

In *Greenpoint Credit Corp. v. Perez*, 75 S.W.3d 40 (Texas Court of Appeals 2002) a jury awarded $5,000,000.00 in emotional distress damages against a debt collector for abusive debt collection tactics.[4]

In *Household Credit Services, Inc. v. Driscol*, 989 S.W. 2d 72 (Texas Court of Appeals 1998) a jury awarded $2,000,000.00 in emotional distress damages (and invasion of privacy) against a debt collector for abusive debt collection tactics.[5]

In *Fernandez v. Citicorp Credit Services*, Docket No. C 522-114 (California Superior Court, February 8, 1989) a jury awarded approximately $96,000.00 in emotional distress damages against a debt collector for abusive tactics.[6]

Based on the complaint filed in this matter and the corresponding facts, the amount sought is in line with similar awards.

---

[4] The jury also awarded $10,000,000.00 in punitive damages.

[5] The jury also awarded $9,000,000.00 in punitive damages. The total award was eventually remitted down to approximately $10,000,000.00.

[6] The jury also awarded $3,000,000.00 in punitive damages. Verdict Search, February 1989. The information can be found on Lexis, in the Jury Verdicts library.

MEM. ISO FOR ENTRY OF DEFAULT JUDGMENT
Case No.  2:15-cv-1222-MCE-KJN

**VI.   PLAINTIFF IS THE PREVAILING PARTY TO THIS ACTION AND THEREFORE ENTITLED TO AN AWARD OF ATTORNEY'S FEES AND COSTS**

The Supreme Court has defined a "prevailing party" as the party in whose favor a judgment is rendered. *Buckhannon Bd. And Care Home, Inc. v. VA Dep't. of Health*, 532 U.S. 598, 603. At the time the default judgment is entered, Plaintiffs will be the prevailing party. As the prevailing party to the action, Plaintiffs are entitled to an award of attorney's fees and costs pursuant to both 15 U.S.C. § 1692k(a)(3) and Cal. Civ. Code § 1788.30(c). Consumers are prevailing parties entitled to an award of attorney's fees and costs for time expended in bringing the action. *Smith v. Law Offices of Mitchell N. Kay*, 762 F. Supp. 82 (D. Del. 1991). The statutory language of the FDCPA makes an award of attorney fees to the successful consumer mandatory. *Booth v. Collection Experts, Inc.*, 969 F. Supp. 1161 (E.D. Wis. 1997).

''The reason for mandatory fees is that Congress chose a 'private attorney general' approach for enforcement of the FDCPA.'' Attorney fee awards exceed the damage awards in most cases, and there need be no proportionality between attorney fees and costs. The Truth in Lending Act ("TILA") has identical attorney fee language and courts interpret TILA as requiring the award of attorney fees even in cases of minor violations. In other words, fee shifting is central to the congressional goals for the FDCPA as can be seen from the statute and its history.

Both the FDCPA and RFDCPA mandate the payment of attorney fees to a successful consumer. The FDCPA states:

> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of— [actual damages]; [statutory damages]; and;

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. §1692k(a) (3).

Similarly, the RFDCPA states:

In the case of an action to enforce any liability under this title, the prevailing debtor shall be entitled to costs of the action. Reasonable attorney's fees, which shall be based on the time necessarily expended to enforce the liability, shall be awarded to the prevailing debtor.

Cal. Civ. Code §1788.30(c).

The purpose of this fee shifting provision is to attract competent counsel. *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997). In litigation under the FDCPA, an award of reasonable attorney fees is mandatory, and not discretionary. *Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991); *Piples v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989) ("Because the FDCPA was violated, however, the statute requires the award of costs and reasonable attorney's fees. . ."); *Mace v. Van Ru Credit*, 109 F.3d 338, 344 N.3 (7th Cir. 1997).

An award of attorney's fees to a successful consumer under the FDCPA is designed to compensate the consumer for his role in privately enforcing the FDCPA, and Congress intended that the prevailing consumer recover reasonable attorney's fees.[7]

_____

[7] "Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." *Graziano*, 950 F.2d 107, 113 (3d Cir. 1991). *See also DeJesus v. Banco*
(footnote continued)

13

## VII.   ATTORNEY FEES SHALL BE CALCULATED PURSUANT TO THE LODESTAR FORMULA

The Ninth Circuit has determined that District courts must calculate awards for attorney's fees using the "lodestar" method.[8] This is especially true with FDCPA actions. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 2001), an action against a debt collector pursuant to the FDCPA, "District courts must calculate awards for attorneys' fees using the "lodestar" method." The "lodestar" figure is the hours reasonably expended multiplied by an allowed hourly rate. *See Hensley v. Eckerhart*, 103 S.Ct. 1933, 1939 (1983) (viewing an award of fees under 42 U.S.C. §1988). The burden is on the applicant to prove that the fee request is reasonable, with a strong presumption that the lodestar amount represents a fair and appropriate fee award.

Although *Hensley* was decided in the context of a civil rights case, the lodestar analysis is applicable to all cases involving an attorney fee shifting statute. *Hensley*, 103 S.Ct. at 1941. The Supreme Court has previously noted that, "We have stated in the past that fee shifting statutes' similar language is 'a strong indication' that they are to be interpreted

---

*Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir. 1990) (awarding attorney fees under the Truth in Lending Act).

[8] *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 2001); *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000); *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales*, 96 F.3d at 363. Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it. *See, e.g., Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046 (9th Cir. 2000); *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1970) (enumerating factors district courts may consider in determining fee awards).

alike."[9] The determination of the allowable hours rests with the sound discretion of the trial court. *Hensley*, 103 S.Ct. at 1941. Determination of the hourly rate by the trial court should consider a rate "commensurate which [counsel] could obtain by taking other types of cases."

### A.     PLAINTIFFS' ATTORNEYS FEES ARE REASONABLE

Plaintiffs' Counsel calculated his fees at an hourly rate of $500 per hour for Charles D. Marshall. To support the billing rates, Plaintiff's counsel sets forth declarations and prior court findings, demonstrating recognized expertise in this area of consumer litigation (See Declaration of Charles D. Marshall In Support of Application For Entry of Default Judgment and For Attorney's Fees and Costs Against Defendant ("Marshall Decl.").

### B.     PLAINTIFF'S COUNSEL'S REASONABLE HOURS EXPENDED AND COSTS INCURRED

Reasonable billing discretion has been used in this case. *See* Marshall Dec. ¶ 17-19. Using reasonable billing discretion, and reducing or not charging for 1.1 hours of work, Mr. Marshall has performed 8.3 hours of work in this case for a total of $4,150.00. *See* Marshall Decl. ¶¶ 17, 18. Plaintiff's counsel also expended a total of $739.90 in costs which includes a filing fee and service of process charges. *See* Marshall Decl. ¶ 22.

---

[9] *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 109 S.Ct. 2732, 105 L.Ed. 2d 639 (1989) (quoting *Northcross v. Memphis Bd. Of Education*, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973).) See also *City of Burlington v. Dague*, 112 S.Ct. 2638, 2641 (1992) (clean water act case applying lodestar analysis); *Simpson v. Sheahan*, 104 F.3d 998, (7th Cir. 1997) (civil rights case); *DeJesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 (1st Cir. 1990) (truth in lending case); *Piekarski v. Home Owners Savings Bank*, F.S.B., 755 F. Supp. 859, 863 (D. Minn 1991) (retaliatory discharge case).

15

## **CONCLUSION**

In the present case, Plaintiff Rodney McBride requests an award of:

    1. $2,000 in statutory damages;

    2. $5,000 in actual damages.

Plaintiff Trulisa McBride requests an award of:

    3. $2,000 in statutory damages;

    4. $5,000 in actual damages.

Plaintiffs' together request attorney's fees and cost of

    5.    $4,150.00 in attorney's fees;

    6.    $739.90 in costs.

The total award requested by Plaintiffs together, with attorney's fees and costs, totals $18,889.90

DATED:  August 28, 2015        **MARSHALL LAW FIRM**

        By:  ___*/s/ Charles D. Marshall*_____
              Charles D. Marshall
              Attorney for Plaintiffs