1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RODNEY MCBRIDE & TRULISA              No. 2:15-cv-1222-MCE-KJN
     MCBRIDE,
12
                    Plaintiffs,
13                                          ORDER
             v.
14
     DELAWARE SOLUTIONS, LLC,
15
16                  Defendant.

17

18   INTRODUCTION

19          Presently pending before the court is plaintiffs Rodney McBride ("Mr. McBride") and

20   Trulisa McBride's ("Ms. McBride") (collectively, "plaintiffs") motion for default judgment

21   against defendant Delaware Solutions, LLC ("defendant"), who is the only named defendant in

22   this action.  (ECF No. 10.)  After defendant failed to file an opposition to plaintiffs' motion in

23   accordance with Local Rule 230(c), the motion was submitted on the record and written briefing

24   pursuant to Local Rule 230(g).  (ECF No. 11.)

25          Having carefully considered the briefing, the court's record, and the applicable law, the

26   court GRANTS IN PART plaintiffs' motion on the terms outlined in this order.[1]

27   _____

28   [1] All parties who have appeared in the action consented to the jurisdiction of a United States
     Magistrate Judge for all further proceedings, including entry of final judgment, pursuant to 28

                                                1

1   BACKGROUND

2        The background facts are taken from plaintiffs' complaint, unless otherwise noted.  (See

3   Complaint, ECF No. 1 ["Compl."].)  Plaintiffs allege that in early February 2015, defendant, a

4   debt collector, called Mr. McBride and left the following voicemail:

5
> Rodney McBride? This is Mr. Steven Sanchez. I haven't heard back
> from you regarding your payday loan with Ace Cash Express. I am
6   > going after you [sic] co-signer to pay back your loan—Trulisa Anne
> McBride Johnson—whose social security number starts with
7   > [*redacted for privacy*], and whose date of birth is September of
> [*redacted for privacy*]. We show her as the co-signer on this loan,
8   > as well as Mia Bradford, as uh, as a credit reference. I just left a
> message with Trulisa McBride on her phone number which does
9   > identify her name. I have a phone number allegedly for her mother,
> Ruby Lee Johnson, as well as the Baxter family, the Claybourne
10  > family and the Johnson family, living in the state of Arkansas,
> Tennessee and Georgia. If I do not hear back from you today, I will
11  > be calling all of Trulisa's relatives in regards to this matter. And
> maybe you'll get one of these messages and call me back 844-259-
12  > 8341. We have a $50 payment scheduled for June 30th, which you
> missed. I need to speak with you as soon as possible.
13

14  (Compl. ¶¶ 7, 8; Declaration of Rodney McBride, ECF No. 10-2 ["RM Decl."] ¶ 4.)  However,

15  plaintiffs claim that, despite the contentions made in the voicemail, Mr. McBride did not have a

16  loan with Ace Cash Express, and Ms. McBride never co-signed, nor was she otherwise liable, for

17  such a loan.  (Compl. ¶¶ 9, 12; RM Decl. ¶¶ 3, 5; Declaration of Trulisa McBride, ECF No. 10-3

18  ["TM Decl."] ¶ 3.)  According to plaintiffs, even though they informed defendant that they had no

19  involvement with the Ace Cash Express loan, defendant continued the collection efforts.  (RM

20  Decl. ¶ 3, TM Decl. ¶ 3.)

21       Around February 4, 2015, despite having been informed that Mr. McBride no longer

22  worked for his father's company, McBride Investments, defendant allegedly called McBride

23  Investments several times, leaving profane and derogatory messages in the general voicemail box

24  providing details about the alleged debt and efforts to collect it.  (Compl. ¶ 10; RM Decl. ¶ 6.)

25  Additionally, on multiple occasions throughout February 2015, defendant purportedly contacted

26  Ms. McBride at work, threatening to call her relatives if she "does not pay her debts" and

27

28  U.S.C. § 636(c).  (ECF No. 6.)

threatening her with criminal charges.  (Compl. ¶¶ 11, 13; TM Decl. ¶¶ 6-8.)  On other occasions, during calls made to plaintiffs, defendant falsely claimed that criminal charges had already been filed against Mr. McBride and that a warrant for his arrest had been issued, but that the charges would be withdrawn if plaintiffs settled the debt.  (Compl. ¶ 14; RM Decl. ¶ 7.)  Plaintiffs contend that defendant acted intentionally with the purpose of coercing plaintiffs into paying the purported debt, and that defendant never sent plaintiffs any written communications and notices regarding that purported debt and plaintiffs' consumer rights as required by applicable federal and state statutes.  (Compl. ¶¶ 15-16; RM Decl. ¶ 3; TM Decl. ¶ 4.)  Plaintiffs allege that they suffered significant emotional distress as a result of defendant's actions, as discussed in greater detail below.  (Compl. ¶ 17; RM Decl. ¶¶ 5, 8-11; TM Decl. ¶¶ 5, 7-9.)

Based on the above, plaintiffs commenced this action on June 8, 2015, asserting two claims for violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 et seq. ("RFDCPA").  (ECF No. 1.)  A proof of service in the record reflects that plaintiffs, through a process server, effectuated service of process on defendant by personally serving defendant's managing agent and person authorized to accept service of process, Alania Whisonant, on June 22, 2015.  (ECF No. 5.)  On August 6, 2015, after defendant failed to appear in the action, plaintiffs requested that the Clerk of Court enter default against defendant, and that same day, the Clerk of Court entered defendant's default.  (ECF Nos. 7-9.)  The instant motion for default judgment followed.  (ECF No. 10.)

LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.

1    1980).  In making this determination, the court considers the following factors:

2
> (1) the possibility of prejudice to the plaintiff, (2) the merits of
3
> plaintiff's substantive claim, (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action[,] (5) the possibility of a
> dispute concerning material facts[,] (6) whether the default was due
4
> to excusable neglect, and (7) the strong policy underlying the
> Federal Rules of Civil Procedure favoring decisions on the merits.
5

6    Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

7         As a general rule, once default is entered, well-pleaded factual allegations in the operative

8    complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc.

9    v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin.

10   Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs,

11   285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pleaded allegations in the

12   complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the

13   pleadings, and claims which are legally insufficient, are not established by default."  Cripps v.

14   Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d

15   1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir.

16   2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law);

17   Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not

18   be entered on a legally insufficient claim").  A party's default does not establish the amount of

19   damages.  Geddes, 559 F.2d at 560.

20   DISCUSSION

21        Appropriateness of the Entry of Default Judgment Under the Eitel Factors

22             1.    *Factor One: Possibility of Prejudice to Plaintiffs*

23        The first Eitel factor considers whether the plaintiff would suffer prejudice if default

24   judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting

25   a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiffs would face

26   prejudice if the court did not enter a default judgment, because plaintiffs would be without

27   another recourse against defendant.  Accordingly, the first Eitel factor favors the entry of a default

28   judgment.

1          2.      *Factors Two and Three: The Merits of Plaintiffs' Substantive Claims and*

2   *the Sufficiency of the Complaint*

3          The court considers the merits of plaintiffs' substantive claims and the sufficiency of the

4   complaint together below because of the relatedness of the two inquiries.  The court must

5   consider whether the allegations in the complaint are sufficient to state a claim on which plaintiffs

6   may recover.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

7          In this case, plaintiffs have adequately alleged that defendant, in the course of attempting

8   to collect the purported debt, violated the FDCPA and the RFDCPA by contacting third parties,

9   such as Mr. McBride's former employer, without Mr. McBride's prior consent; making threats

10   about calling Ms. McBride's relatives; repeatedly calling Ms. McBride at her place of

11   employment; using profanity in messages left in the general voicemail box of Mr. McBride's

12   former employer; misrepresenting that criminal charges had been filed and that a warrant for Mr.

13   McBride's arrest had been issued; and failing to send plaintiffs the notices and statements of

14   consumer rights required under the FDCPA and the RFDCPA.  (Compl. ¶¶ 19, 22.)  See 15

15   U.S.C. §§ 1692c(b), 1692d, 1692e(4), (5), (7), 1692g(a); Cal. Civ. Code §§ 1788.10(b), (e), (f),

16   1788.11, 1788.12(a)-(b), 1812.700, 1812.702.  Therefore, plaintiffs' complaint is sufficient and

17   their substantive claims appear to have merit.

18          As such, the second and third Eitel factors favor the entry of a default judgment.

19          3.      *Factor Four: The Sum of Money at Stake in the Action*

20          Under the fourth factor cited in Eitel, "the court must consider the amount of money at

21   stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at

22   1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D.

23   Cal. 2003).  In this case, plaintiffs each seek $2,000.00 in statutory damages and $5,000.00 in

24   actual damages, along with $4,150.00 in attorneys' fees and $739.90 in costs.  (ECF No. 10-1 at

25   16.)  Although the court makes some adjustment to the award of attorneys' fees for the reasons

26   discussed below, the sum of money at stake is not significantly out of proportion to the

27   seriousness of defendant's conduct, and therefore does not militate against the entry of a default

28   judgment.

4.  *Factor Five: The Possibility of a Dispute Concerning Material Facts*

The court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default, and defendant has not appeared to dispute any such facts.  Thus, there is no likelihood that any genuine issue of material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.  As such, the court concludes that the fifth Eitel factor favors a default judgment.

5.  *Factor Six: Whether the Default Was Due to Excusable Neglect*

In this case, there is simply no indication in the record that defendant's default was due to excusable neglect.  Accordingly, this Eitel factor likewise favors the entry of a default judgment.

6.  *Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).  Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

In sum, after carefully considering and weighing all of the Eitel factors, the court concludes that plaintiffs are entitled to a default judgment against defendant.

Terms of the Judgment to Be Entered

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered.  Plaintiffs' motion for default judgment requests monetary damages (actual damages and statutory damages) as well as attorneys' fees and

6

1  costs, all of which were also requested in the complaint.  (Compare ECF No. 10-1 at 16 with

2  Compl. at 8.)  Each form of relief is addressed separately below.

3            *Monetary Damages*

4            Under the FDCPA, a defendant is liable for any actual damages suffered by an individual

5  plaintiff as a result of the defendant's violation of the statute, as well as additional statutory

6  damages "as the court may allow, but not exceeding $1,000."  15 U.S.C. § 1692k(a).  In

7  determining the amount of damages to award, the court must consider, among other relevant

8  factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such

9  noncompliance, and the extent to which such noncompliance was intentional."  15 U.S.C. §

10  1692k(b)(1).  Under the RFDCPA, a defendant is likewise liable for any actual damages suffered

11  by an individual plaintiff  as a result of the defendant's violation of the statute.  Cal. Civ. Code §

12  1788.30(a).  Additionally, if the defendant's violation was willful and knowing, the defendant

13  shall also be liable "for a penalty in such amount as the court may allow, which shall not be less

14  than one hundred dollars ($100) nor greater than one thousand dollars ($1,000)."  Cal. Civ. Code

15  § 1788.30(b).  Statutory damages may be awarded cumulatively under both statutes.  See 15

16  U.S.C. § 1692n; Cal. Civ. Code § 1788.32.

17            In this case, plaintiffs each seek an award of $5,000.00 in actual damages for emotional

18  distress.  Courts have recognized that emotional distress suffered as a result of a defendant's

19  violation of the FDCPA qualifies as actual damages for purposes of that statute.  See McCollough

20  v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 957 (9th Cir. 2011); see also Torres v.

21  Bernstein, Shapiro & Assocs., 2012 WL 2376401, at *4 (E.D. Cal. Jun. 22, 2012).  Plaintiffs'

22  declarations in support of the instant motion document that plaintiffs experienced stress, anxiety,

23  nervousness, anguish, fear, loss of sleep, headaches, depression, embarrassment, and humiliation

24  as a result of defendant's actions.  (RM Decl. ¶¶ 5, 8-11; TM Decl. ¶¶ 5, 7-9.)  Mr. McBride

25  suffers from post-traumatic stress disorder ("PTSD") attributable to prior traumatic life events,

26  and his PTSD symptoms were significantly aggravated by defendant's conduct.  (RM Decl. ¶ 9.)

27  According to plaintiffs, defendant's conduct also led to marital discord, because Ms. McBride

28  initially thought that Mr. McBride had taken out a loan without consulting her, resulting in

arguments.  (RM Decl. ¶¶ 9-10; TM Decl. ¶¶ 7-8.)  Additionally, Ms. McBride found it particularly stressful to receive defendant's calls at her place of employment, because she works as a nurse in a cardiovascular intensive care unit and was not allowed to accept any personal, non-emergency calls.  (TM Decl. ¶ 6.)

Plaintiffs' claims of emotional distress are reasonably consistent with the nature and frequency of defendant's harassing conduct, which included, *inter alia*, calling plaintiffs' former and current places of employment, using profanity, threatening to call plaintiffs' family members, and threatening false criminal charges and arrest.  Additionally, the court notes that the amount sought by each plaintiff for his or her emotional distress is not substantial and is unopposed.  Therefore, the court finds it appropriate to award each plaintiff $5,000.00 in actual damages for emotional distress.  See Torres, 2012 WL 2376401 (awarding $5,000.00 for emotional distress damages to a plaintiff on a motion for default judgment in a FDCPA/RFDCPA action, which arguably involved less persistent conduct by the debt collector).

Plaintiffs also each request $1,000 in statutory damages under the FDCPA and $1,000 in statutory damages under the RFDCPA, the maximum amounts authorized under each statute.  Based on the complaint's factual allegations, which are deemed true for purposes of this motion, defendant's violations of the FDCPA and RFDCPA were frequent, persistent, egregious, and plainly intentional.  This is not the type of case in which the defendant's violations of the statutes were mere technicalities.  To the contrary, defendant's abusive practices constitute the exact type of conduct that the statutes were intended to prevent.  As such, an award of maximum statutory damages under both statutes is warranted.  Each plaintiff is awarded $1,000.00 in statutory damages under the FDCPA and $1,000.00 in statutory damages under the RFDCPA.

*Attorneys' Fees and Costs*

Finally, plaintiffs request an award of attorneys' fees and costs.  Both the FDCPA and the RFDCPA provide for an award of reasonable attorneys' fees and costs to a prevailing plaintiff.  15 U.S.C. § 1692k(a)(3); Cal. Civ. Code § 1788.30(c).

Plaintiffs seek an award of $739.90 in costs, consisting of a filing fee of $400 to commence the action and $339.90 in service of process fees.  (Declaration of Charles D.

1   Marshall, ECF No. 10-4 ["Marshall Decl."] ¶ 22.)  These costs are reasonable and are thus

2   awarded.

3           Plaintiffs further seek an award of attorneys' fees in the lodestar amount of $4,150.00,

4   based on 8.3 hours of work performed at an hourly rate of $500.00.  (Marshall Decl. ¶¶ 16-21.)

5   Plaintiffs do not seek any adjustments to the lodestar figure.  The court finds the amount of time

6   spent by plaintiffs' counsel to be reasonable, and notes that plaintiffs' counsel has already

7   exercised reasonable billing judgment by voluntarily writing off some of the time he spent on the

8   case.  (Id. ¶ 17.)  However, although the court has no reason to doubt plaintiffs' counsel's

9   experience and expertise (17 years of litigating both individual consumer rights cases and larger,

10  complex consumer class actions) (Marshall Decl. ¶ 14, Ex. 1), the court finds an hourly rate of

11  $500.00 to be excessive in light of prevailing market rates for a routine improper debt collection

12  case in the Eastern District of California.  See, e.g. Cuevas v. Check Resolution Servs., 2:12-cv-

13  981-KJM-KJN, ECF No. 27 (E.D. Cal. Aug. 8, 2013) (awarding hourly rate of $250 in

14  FDCPA/RFDCPA case upon a motion for default judgment); Torres, 2012 WL 2376401, at *5

15  (awarding hourly rates of $275 and $355 in FDCPA/RFDCPA case upon a motion for default

16  judgment).  Plaintiffs' reliance on fee awards in the Northern District of California is misplaced,

17  because those fee awards are not instructive with respect to prevailing market rates in this federal

18  district.  Consistent with the above, the court concludes that an hourly rate of $300.00 is more

19  appropriate.  With modification of the hourly rate, plaintiffs are thus awarded attorneys' fees in

20  the amount of $2,490.00 (8.3 hours multiplied by an hourly rate of $300.00).

21  CONCLUSION

22          For the foregoing reasons, IT IS HEREBY ORDERED that:

23      1.  Plaintiffs' motion for default judgment (ECF No. 10) is GRANTED IN PART.

24      2.  A default judgment is entered in favor of plaintiffs and against defendant.

25      3.  Plaintiff Rodney McBride is awarded $5,000.00 in actual damages and $2,000.00 in

26          statutory damages, for a total monetary damages award of $7,000.00.

27      4.  Plaintiff Trulisa McBride is awarded $5,000.00 in actual damages and $2,000.00 in

28          statutory damages, for a total monetary damages award of $7,000.00.

1        5. Plaintiffs are awarded attorneys' fees in the amount of $2,490.00 and costs in the

2          amount of $739.90.

3        6. The Clerk of Court shall close this case.

4        IT IS SO ORDERED.

5   Dated:  October 5, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE